# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

Troy Graham  \*

v.  \*  Civil Action No. CCB-17-3148

Santander Consumer USA, Inc.,  \*

\*
\*\*\*

**Memorandum**

The plaintiff, Troy Graham, has filed a class action lawsuit against the defendant, Santander Consumer USA, Inc., ("Santander"), alleging that Santander violated Maryland's Credit Grantor Closed End Credit provisions. Santander now moves to compel non-class arbitration of the dispute as provided in the parties' underlying contract, and has asked the court to seal several of its filings. For his part, Graham has filed a motion to strike and a motion under Fed. R. Evid. 106.[1] For the reasons stated below, Santander's motion to compel arbitration will be granted, but its motions to seal, and each of Graham's motions, will be denied.

**Background**

This dispute arises from two financing agreements used by Graham to purchase a 2008 Dodge Avenger—a Buyer's Order and a Retail Installment Sales Contract ("RISC")—from Darcars of Auth Way Inc., ("Darcars").[2] (Mot. to Compel, ECF No. 9, Nightengale Decl., Exs. A, B). After Darcars assigned these agreements to Santander, (Nightengale Decl. at ¶ 4), Graham defaulted on his monthly payments in breach of the RISC, prompting Santander to repossess the

---

[1] Graham had moved to remand the case to state court, (ECF No. 10), but has since withdrawn the motion, (ECF No. 24).
[2] Each contract incorporated, by reference, the other. (*See* ECF No. 9, Nightengale Decl., Ex. A at p. 1, Ex. B at p. 1).

1

Dodge Avenger in November 2013. (Am. Compl., ECF No. 20, at ¶¶ 38, 43, 49). Three years later, Santander assigned its rights to any monetary claim on Graham's debt to NCB Management services. (Def.'s Reply, ECF No. 26, Nightengale Decl., Ex. A, ¶ 2.1).

On September 22, 2017, Graham filed a class-action complaint in Maryland state court alleging that Santander violated the Maryland Credit Grantor Closed End Credit Provisions ("CLEC"), MD. CODE COMM. LAW § 12-1001 *et seq.* (*Id.* at ¶¶ 76-89). The complaint alleged that four classes of consumers have been harmed by Santander: (1) those charged a convenience fee; (2) those who had their vehicles repossessed and were charged a storage fee to redeem personal property; (3) those who had their vehicles repossessed and were required to pay a different fee to redeem personal property; and (4) those who had their vehicles repossessed and did not receive a timely redemption notice. (*Id.* at ¶ 60).

Santander removed the case to federal court in October 2017. (ECF No. 1). Since then, Santander moved to compel non-class arbitration under the Buyer's Order and RISC, (ECF No. 9), and to seal several filings, (ECF Nos. 27, 31, 33, 50), and Graham filed a motion to strike a portion of Santander's reply to Graham's opposition to the motion to compel, (ECF No. 29), and filed a motion to compel Santander to provide additional evidence, (ECF No. 48).

**Standard of Review**

"Motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment" and "[w]hether the motion should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings." *PC Const. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477-78 (D. Md. 2012); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 241-42 (4th Cir.

2017) (adopting the summary judgment standard used by the district court). Because the court will consider documents outside the pleadings, Santander's motion to compel will be reviewed under the summary judgment standard.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015).

## Analysis

Santander's motions will be granted in part and denied in part. Its motion to compel arbitration will be granted because a binding arbitration agreement exists between the parties, but its motions to seal will be denied because Santander has not shown that redaction would not just as well serve its needs. Graham's motions will be denied. He has not shown that he has been

prejudiced by any new arguments raised in Santander's reply nor has he shown that compelling the introduction of additional evidence is necessary to avoid unfairness.

    I.      Motion to Compel Arbitration Agreement

Graham opposes Santander's motion to compel on three grounds: (1) neither Santander specifically, nor an assignee generally, was named in the contract; (2) the arbitration agreement is not enforceable by an assignee; and (3) even if Santander could enforce the contract, and even if the arbitration agreement could be enforced by an assignee, Santander assigned away its right to arbitration.[3]

Both parties agree that their dispute is governed by the Federal Arbitration Act, a statute that permits "[a] party aggrieved by [an] alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration . . . [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Four elements must be satisfied before applying the FAA: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute." *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (internal quotation marks omitted). The parties only dispute the existence of the second element—whether the arbitration agreement is a term of the contract between Graham and Santander. To answer that question, the court must consider Maryland contract law. *Id.* at 85.

---

[3] Graham does not oppose other aspects of the arbitration agreement, such as its prohibition on class-based arbitration.

A. Assignment

First, Santander cannot enforce the arbitration agreement, according to Graham, because it was not a party to the original agreement. But Graham's view is fatally undermined by the assignment of Darcars' rights to Santander. An assignment allows a third party to "stand in the shoes" of an original party to the contract, *Miller v. Pacific Shore Funding*, 224 F. Supp. 2d 977, 996 (D. Md. 2002) (applying Maryland law), "transfer[ing] all interests in the property from the assignor to the assignee," *Roberts v. Total Health Care, Inc.*, 709 A.2d 142, 148 (Md. 1998). Thus, in effect an assignment replaces the name of the assignor in the contract with that of the assignee, removing any need for a contract to anticipate an assignee by, for example, specifically naming him as a future party. Here, the assignment had just that effect, granting Santander, though unnamed in the contract, every right Darcars previously enjoyed under the contract.[4] Graham's argument is unpersuasive.

B. Scope of the Arbitration Agreement

Next, Graham argues that even if the assignment is valid, by its terms the contract prohibits the assignment of its arbitration provision. Under Maryland law, contract interpretation requires an "objective approach . . . giv[ing] effect to [the] language as written." *Ocean Petroleum, Co., Inc. v. Yanek*, 5 A.3d 683, 690 (Md. 2010).

> Defining "dispute" for the purposes of the arbitration provision the contract states:
>
> A [d]ispute is any question as to whether something must be mediated and the terms and procedures of the mediation, as well as any allegation concerning a violation of a sale state or federal statute that may be the subject of mediation, any monetary claim, whether contract, tort, or other, arising from (1) the negotiation

---

[4] Graham contends that this case is exactly like *Hartford Acc. & Indem. Co. v. Scarlett Harbor Associates Ltd. Partnership*, 695 A.2d 153 (Md. 1997) where the Maryland Court of Appeals held that a third party cannot enforce an arbitration agreement to which it is not a party, even if that third party was a party to a related contract. 695 A.2d at 155-57. But Santander is not a third-party to a contract—by assignment, it was made a principal party—and therefore *Hartford* is inapposite to this case.

5

> of and terms of the Buyer's Order, (2) any service contract or insurance product, or (3) any retail installment sale contract or lease (*but this mediation agreement does not apply to and shall not be binding on any assignee thereof*)

(Def.'s Mot., Nightengale Decl., Ex. A, at ¶ 13) (numeration and emphasis added). To Graham, the parenthetical limits the whole mediation provision, rather than just the assignability of the monetary claim. Graham's interpretation, however, is foreclosed by *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690 (4th Cir. 2012), a Fourth Circuit decision interpreting a nearly identical contractual provision:

> A [d]ispute is any question as to whether something must be arbitrated, as well as . . . any purely monetary claim greater than $1,000 in the aggregate, whether contract, tort, or other, arising from (1) the negotiation of and terms of the Buyer's Order, (2) any service contract or Insurance product, or (3) any retail installment sale contract or lease (but this arbitration provision does not apply to and shall not be binding on any assignee thereof).

*Id.* at 701; *see also Taylor v. Santander Consumer USA, Inc.*, 2015 WL 5178018 at *6 (D. Md. September 3, 2015).[5] Rejecting Graham's interpretation, the Fourth Circuit held that the limiting parenthetical only "modifies [the] list of three types of monetary claims that are subject to arbitration," and therefore, as an assignee of the entire contract and not just a monetary claim, the contract did not limit the defendant's ability to compel arbitration. *Id.*

The identical structure of the provision challenged by Graham and the one considered in *Rota-McLarty* compels the court to reach the same conclusion here. Here, as in *Rota-McLarty*, the arbitration agreement contains a limiting parenthetical. And here, as in *Rota-McLarty*, that parenthetical is immediately preceded by a list of monetary claims that may be subject to arbitration. The court can see no structural reason to diverge from the Fourth Circuit's holding

---

[5] Unpublished cases are cited for the strength of their reasoning and not for any precedential value.

that the parenthetical modifies only the immediately preceding list of monetary claims, nor does Graham offer one.

Nor does a textual difference compel a different result. The *Rota-McLarty* provision differs in only one relevant respect from the provision at issue here. Instead of using "mediation agreement" in the limiting parenthetical, the *Rota-McLarty* provision used "arbitration provision." *Id.* But this is a distinction without a difference. "Arbitration" and "mediation" are near synonyms, and though on first glance using "agreement" rather than "provision" may seem significant, the illusion vanishes on closer inspection.

As the word "provision," unlike the word "agreement," may refer to a sub-clause, one might argue that the Fourth Circuit's interpretation relied on this careful reading, its reasoning going something like: "the word 'provision' may refer to something narrower than the entire arbitration agreement and thus the text of the limiting parenthetical supports our structural analysis that the parenthetical does not modify the whole agreement." Besides the Fourth Circuit's choice not to parse the agreement's text so carefully, the *Rota-McLarty* arbitration provision, like the one presented here, was not set out in sub-clauses. Rather it was presented as a single clause, without enumeration.[6] Thus, "provision" as used in *Rota-McLarty* could not have referred to something narrower than the whole arbitration agreement because there was nothing narrower to refer to. As a result, the words "agreement" and "provision" could have been used interchangeably, giving the court no reason to think the Fourth Circuit would treat this provision any differently from the one in *Rota-McLarty*.

The *Rota-McLarty* agreement and the one here differ in one other respect—unlike the arbitration agreement here, the one considered by the Fourth Circuit "contemplate[d] the binding

---

[6] Enumeration was added by the Fourth Circuit in setting forth the relevant language in the contract. *Rota-McLarty*, 700 F.3d at 701.

nature of the agreement on" an assignee "by equating the 'Dealer' and the 'assignee' . . . in several places." *Id.* But the Buyer's Order signed by Graham comes close to doing the same. It notes that "[t]his [arbitration] Agreement shall survive any termination, payoff or *transfer* of your financing contract," (Def.'s Mot., Nightengale Decl., Ex. A, & 13), making it impossible to square Graham's view of the mediation agreement—as excluding assignees—with the agreement itself—which contemplates that the agreement will survive an assignment. Considering this, along with the agreement's structure, there is but one reasonable interpretation of the agreement: It survives a total assignment of the contract, like the one here, and Santander may compel arbitration.

### C. Scope of Assignment to NCB

Still, Santander may be prevented from enforcing the arbitration agreement if, as Graham argues, it assigned its rights away to NCB Management Services, Inc. ("NCB"). Graham insists that Santander cannot compel arbitration "because it assigned 'all rights, title and interest' [it held in] Graham's alleged deficiency balance to NCB Management Services, Inc." (Pl.'s Opp., ECF No. 16, p. 13). But a careful reading of the assignment, and indeed Graham's own allegation, shows that Santander did not assign away *all* of its rights, but just its rights to a monetary claim on Graham's outstanding payment.

Santander accomplished the assignment to NCB by way of a Forward Flow Financial Assets Sale Agreement. As its title makes clear, the agreement concerned financial assets: "if Buyer and Seller agree upon a set price, Seller agrees to sell, and Buyer agrees to purchase the Financial Assets." (Def.'s Reply, ECF No. 26, Nightengale Decl., Ex. A, ¶ 2.1). The agreement defines "Financial Assets" as the debt owed under a retail installment sales finance contract, the very kind of contract Graham entered and was subsequently assigned to Santander. (*Id.* at ¶

8

1.28). From top to bottom, the agreement makes clear that all Santander assigned to NCB was its claim on Graham's debt without once suggesting that Santander no longer possessed rights over all other parts of the contract with Graham.[7] Accordingly, Santander remains free to compel arbitration.

***

In sum, Santander may enforce the arbitration agreement. An assignment grants the assignee the same rights as the original party to the contract, the arbitration agreement remains actionable on assignment, except as to monetary claims, and Santander did not assign away its rights to arbitration. Santander's motion to compel arbitration will be granted.

II. Miscellaneous Motions

The parties also have filed several other motions—Graham filed a motion to strike a new argument and new evidence in Santander's reply to Graham's opposition to the motion to compel, (ECF No. 29), and then filed a motion to compel Santander to provide more of that evidence, (ECF No. 48). Santander has filed several motions to seal filings submitted to the court, (ECF Nos. 27, 31, 33, 50). For the reasons stated below, each of these motions will be denied.

A. Graham's Motion to Strike and Compel the Introduction of Evidence

First, Graham asserts that Santander's argument that it did not assign away its right to arbitrate this dispute to NCB should not be considered because it was raised for the first time in reply. But, "the power to decline consideration of" arguments raised for the first time in reply is

---

[7] Graham's reliance on *Novic v. Midland Funding, LLC*, 271 F. Supp. 3d 778 (D. Md. 2017) is inapposite. There, the court held that an entity that assigns *all* of its rights under a contract cannot subsequently enforce an arbitration agreement in the contract it assigned away. *Novic*, 271 F. Supp. 3d at *5. Here, Santander only assigned away some of its rights under the contract.

discretionary, and courts are not precluded from considering such issues in appropriate circumstances," such as where the opposing party was able to respond to those arguments in a surreply. *Clawson v. FedEx Ground Package System, Inc.*, 451 F. Supp. 2d 731, 734-35 (D. Md. 2006). Putting aside the fact that it was Graham who first raised the issue of Santander's assignment to NCB, (ECF No. 16 at p. 13), Graham was able to file a surreply to respond to whatever issues, if any, were raised for the first time in Santander's reply. The motion will be denied.

If Santander's assignment to NCB is considered, Graham also has moved to compel Santander, under Federal Rule of Evidence 106, to submit the full Forward Flow Financial Assets Sale Agreement, the instrument used by Santander to assign its monetary claim on Graham's debt to NCB, because, according to Graham, missing pages are critical to judging Santander's argument that it did not assign all of its contract rights away.

Federal Rule of Evidence 106 states that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. The Rule "was designed to prevent" a partial writing from misleading a factfinder because of what the missing portion adds or clarifies. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171-72 (1988).

Here, Graham argues that Santander's submission is misleading because a missing portion may state that, in addition to its monetary claim on Graham's debt, Santander assigned to NCB the right to take action related to the purchased debt in any manner "which [Santander] has had or was entitled to exercise as the owner of certain Financial Assets." (ECF No. 48 at p. 5).

But this language does not add anything new. Rather it affirms what Santander has said all along: it assigned all of its rights to take action on its monetary claim on Graham's debt to NCB. And as stated above, an assignee to a contract right holds that right in exactly the same manner as its previous owner. Thus, if the alleged missing material does anything, it merely reaffirms the effect of the assignment—NCB could do with Graham's purchased debt all that Santander previously could—without once suggesting that Santander assigned away its rights to arbitrate this dispute. As a result, Santander has not shown that fairness requires compelling Santander to submit the remaining pages of the Forward Flow Financial Assets Sale Agreement, and the motion will be denied.

B. Santander's Motion to Seal

Santander for its part has filed four motions to seal filings and related exhibits. The Fourth Circuit has held that:

> It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings. The right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny . . . . The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only be showing that countervailing interests heavily outweigh the public interests in access . . . . We have cautioned district courts that the right of public access, whether arising under the First Amendment or the common law, may be abrogated only in unusual circumstances.

*Doe v. Public Citizen*, 749 F.3d 246, 265-66 (4th Cir. 2014) (internal citations and quotation marks are omitted).

Santander has not provided reason for the court to close its filings to the public. In each of its motions, Santander hangs its arguments to seal on the confidentiality of the business

records attached to, and relied on by, the relevant filings.[8] But Santander has not provided any reason why redacted versions of the documents would not just as well satisfy its effort to protect sensitive business information. Indeed, it has even offered redaction as a suitable alternative to sealing the filings. (ECF No. 30 at p. 5). Thus, Santander will be granted leave to file redacted versions of the documents it has moved to seal.[9]

## Conclusion

For the reasons stated above, Santander's motion to compel arbitration will be granted. A separate order follows.

\_\_\_June 1, 2018_____                                    /s/_____
    Date                                                                      Catherine C. Blake
                                                                                  United States District Judge

---

[8] Graham argues that confidentiality by itself is insufficient to justify sealing documents. But the cases on which he relies refer not to documents that are confidential in their own right—because of sensitive information they contain, or because of a contractual obligation to keep the information private—but rather became confidential by virtue of a protective order in the case. *See, e.g.*, *Visual Min., Inc. v. Ziegler*, 2014 WL 690905 at \*5 (D. Md. February 21, 2014).

[9] If Santander determines that redaction is insufficient after a good faith effort it is free to renew its request for seal.